IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DARLA DUNCAN, as guardian of
Johnathan Duncan, on behalf of
Johnathan Duncan and all others similarly
situated; DARREN NORMAN, on behalf of
himself and all others similarly situated; and
WYNONA RANDOLPH, temporary guardian
of Kristian Smith, on behalf of Kristian Smith
and all others similarly situated                                    PLAINTIFFS

v.                            No. 4:11-cv-325-DPM

CHARLES SMITH, individually and in his
official capacity as policy maker of the
Arkansas State Hospital; STEVE DOMAN,
individually and in his official capacity as
policy maker of the Arkansas State Hospital;
JAMES SCOGGINS, individually and in his
official capacity as policy maker of the Arkansas
State Hospital; JOHN SELIG, individually and
in his official capacity as Director of the
Department of Human Services; JAMES GREEN,
Director of DDS, in his individual and in his official
capacity; VERONICA WILLIAMS; in her official
and individual capacities; and ANN TUCKER, in
her official and individual capacities                               DEFENDANTS


ORDER

Johnathan Duncan, Darren Norman, and Kristian Smith are all current

or former Arkansas State Hospital patients.  They say that officials from the

State Hospital and the Department of Human Services violated their rights

under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the United States Constitution. The Plaintiffs seek monetary, injunctive, and declaratory relief. Four motions are pending: two motions to dismiss, a motion to amend, and a motion for preliminary injunction.

1. **Darren Norman.** In ruling on a Rule 12(b)(6) motion to dismiss, this Court "accept[s] all facts in the complaint as true and grant[s] all reasonable inferences in favor of [Duncan, Norman, and Randolph]." *Central Platte Natural Resources Dist. v. U.S. Dept. of Agriculture*, 643 F.3d 1142, 1148 (8th Cir. 2011). The fact that a complaint "does not state with precision all elements that give rise to a legal basis for recovery" is not grounds for dismissal. *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 (8th Cir. 1999). But something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009).

The amended complaint states that "Darren Norman is a person with a mental disability who was committed to the forensic unit, but who was released." *Document No. 60, at 1.* While he was a patient at the State Hospital,

-2-

Norman endured verbal and physical abuse, was denied timely services, and was inappropriately placed. Beyond that, the amended complaint is void of details about Norman. The Court does not know which Defendants allegedly violated Norman's rights, or when, where, and how they did so. The proposed third amended complaint, *Document No. 75-1*, adds no details about Norman. The allegations here are precisely the sort of "unadorned" accusations that *Iqbal* proscribes. Darren Norman's claims are therefore dismissed without prejudice for failure to state a claim. FED. R. CIV. P. 8(a)(2).

2. **Title II and the Rehabilitation Act of 1973.** Duncan and Smith allege that the Defendants violated the ADA and the Rehabilitation Act by failing to place them in the least restrictive environment appropriate to their needs. As to Duncan, this claim fails as a matter of law. Claims based on medical treatment decisions cannot be brought under either the ADA or the Rehabilitation Act. *Burger v. Blooomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (*per curiam*). For example, whether to place mentally ill patients under suicide watch is a medical treatment decision. *See generally Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001); *see also Shelton v. Arkansas*

-3-

*Department of Human Services*, No. 4:10-cv-1519-JLH, 2011 WL 1193026, at *3
(E.D. Ark. 29 Mar. 2011).

At issue in Duncan's case is the Defendants' decision to place him in
Unit 3 Lower at the State Hospital—a unit opened in 2007 to provide
treatment for adolescent males with co-occurring mental illness and
developmental disability.   Duncan argues that this placement was too
restrictive.  But "the State generally may rely on the reasonable assessments
of its own professionals in determining whether an individual meets the
essential eligibility requirements for habitation in a community-based
program.  Absent such qualification, it would be inappropriate to remove a
patient from the more restrictive setting."  *Olmstead v. Zimring*, 527 U.S. 581,
602 (1999) (quotation omitted).

Duncan also offers no authority for the proposition that this placement
decision is not a medical treatment decision; and this strikes the Court as a
decision requiring some professional medical judgment.  Duncan was not just
assigned to a particular room on a certain floor in a hospital.  His diagnosis
determined where he was assigned.  This decision is like deciding to put a
patient in a cardiac intensive care unit.   The treatment is driving the

-4-

placement. *Burger* therefore applies and binds this Court. Duncan's ADA and Rehabilitation Act claims must be dismissed because they are premised on the medical decision to place Duncan in Unit 3 Lower.

As to Kristian Smith, however, it is not clear at this point that *Burger* applies or bars his Title II and Rehabilitation Act claims. Smith's claims here are based on the fact that the State Hospital failed to find bed space for him within a reasonable time. As a result, Smith had to remain in the Pulaski County jail, where he allegedly was not receiving appropriate medical care. Unlike the decision to place a patient in a particular unit, the failure to place someone in a timely manner is not necessarily an active decision about medical treatment. Instead, it is often the type of passive decision that occurs when hospital facilities, state employees, and resource dollars are all stretched too thin. The Court therefore declines to hold, as a matter of law, that *Burger* bars Smith's ADA and Rehabilitation Act claims at this stage.

What about immunity? Arkansas has waived its sovereign immunity under § 504 of the Rehabilitation Act. *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (*en banc*). But sovereign immunity under the ADA is more complicated. "[I]nsofar as Title II creates a private cause of action for

-5-

damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis original). Determining whether sovereign immunity bars Smith's Title II claims therefore requires analysis "on a claim-by-claim basis[.]" *Ibid*.

Among other things, Smith alleges that state officials' failure to timely provide him with needed psychiatric services in an appropriate environment constituted deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment. His claim for money damages against State agencies and officials under Title II is therefore based, at least in part, on conduct that (he says) independently violated the Fourteenth Amendment. The Court therefore cannot hold, at this early stage, that sovereign immunity bars Smith's Title II claim.

Similarly, the Court cannot say at this point that Smith's ADA and Rehabilitation Act claims are barred by qualified immunity. *Jones v. McNeese*, ___ F.3d ___, ___, 2012 WL 1033539, at *2 (8th Cir. 29 Mar. 2012). Taking the limited record presented thus far in the light most favorable to Smith, "it is quite plausible that the alleged deliberate refusal of [State Hospital] officials

to accommodate [Smith's] disability-related needs . . . constituted exclusion from participation in or . . . denial of the benefits of the [Hospital's] services, programs, or activities." *Georgia*, 546 U.S. at 157 (quotations and alterations omitted). And Smith's rights under the Acts were clearly established at the time of the alleged violations. *See, e.g., Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (ADA protects state prisoners). The particulars of the immunity issues can be more clearly articulated — and more thoroughly supported and briefed — at a later stage on a more complete record. They should be. But at this point, Defendants' motion to dismiss Smith's Title II and Rehabilitation Act claims must be denied without prejudice.

3. **Constitutional Claims.** Duncan and Smith also allege that the Defendants violated their constitutional rights without due process of law. *Document No. 60, at 7–8.* Generally, claims for monetary damages against a state or state employees acting in their official capacities are barred by the Eleventh Amendment. *Treleven v. University of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996). And the Plaintiffs admit that they are not seeking monetary relief against the Arkansas agencies or employees in their official capacities

-7-

under § 1983. *Document No. 45, at 1*; *see also Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) (suit against employees acting in their official capacities is no different from a suit against the State itself). To the extent that Duncan and Smith plead any official-capacity constitutional claims for monetary damages, those claims must therefore be dismissed.

The individual-capacity Defendants also argue that, as a matter of law, qualified immunity bars the due-process claims against them. Government officials performing discretionary functions are immune from suit so long as they do not violate a clearly established constitutional right. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010). The Defendants here are half right: they are entitled to qualified immunity on Duncan's due-process claims, but not on Smith's.

Duncan's parents voluntarily admitted him to the State Hospital; and the law is not clearly established in favor of due-process rights on the part of voluntarily admitted patients. *Kennedy v. Schafer*, 71 F.3d 292, 294 (8th Cir. 1995); *see also Shelton*, 2011 WL 1193026, at *4. The Defendants are therefore entitled to qualified immunity on Duncan's constitutional claims.

-8-

Duncan argues that, although his parents voluntarily admitted him, he was "unable to leave the Arkansas State Hospital voluntarily without losing his DDS waiver." *Document No. 60, at 4.* He therefore argues that, like in the *Kennedy* case, a fact issue exists about whether he was voluntarily at the State Hospital. The Court disagrees. In *Kennedy*, the minor's parents voluntarily admitted her to a Missouri psychiatric hospital. A minor in this situation in Missouri can usually be released at her parents' request. But if the head of the facility determines that the patient presents a likelihood of serious physical harm to herself, then that administrator can refuse the release. *Kennedy*, 71 F.3d at 294–95. Because the hospital placed the minor patient under suicide watch, the *Kennedy* Court found that it was possible that "the situation that she was in was sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." 71 F.3d at 295 (quotations omitted).

Duncan's situation is different from the one presented in *Kennedy*. There, a Missouri statute made it possible for the hospital to hold the patient against her will and against her parents' wishes. Here, Duncan says that the long waiting list for community services made it impractical for his parents

to voluntarily check him out of the State Hospital. This impracticality is a far cry from the potential impossibility of removing the child in *Kennedy* from the hospital. The Court therefore declines to hold, as a matter of law, that Duncan was an involuntary patient at the State Hospital during the time at issue. Because Duncan was voluntarily admitted, and no State action had rendered him a *de facto* involuntary patient, there was no clearly established due-process right. The individual-capacity Defendants are entitled to qualified immunity; and Duncan's constitutional claims are dismissed with prejudice.

Kristian Smith's situation is different. He is not a voluntary patient at the State Hospital. Smith is a state-court defendant found unfit to proceed and therefore involuntarily committed pursuant to ARK. CODE ANN. § 5-2-310. "[T]he deprivation of liberty [that] triggers the protections of the Due Process Clause is the State's affirmative act of restraining [Smith's] freedom to act on his own behalf — through incarceration, institutionalization, or other similar restraint of personal liberty." *Kennedy*, 71 F.3d at 294. Smith has a clearly established right to due process because the State has involuntarily institutionalized him. His due-process claims are not barred by qualified

-10-

immunity; and he may proceed with those claims against the individual-capacity Defendants.

4. **Injunctive Relief.**  Duncan and Smith also ask for "an injunction to require the Defendants to provide mentally ill or disabled patients with care in the least restrictive environment appropriate to their needs[.]"  *Document No. 60, at 11.*  They do not have standing to request this relief for all mentally ill or disabled patients; but they are entitled to seek this equitable relief on their own behalf under *Ex parte Young.*  209 U.S. 123 (1908); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (official-capacity actions for prospective relief not treated as actions against the State itself).

Duncan's and Smith's claims for injunctive relief are nonetheless moot. An admittedly "appropriate" treatment plan "designed to place young Duncan in the community" has been implemented; and Unit 3 Lower no longer houses dually diagnosed adolescents at the State Hospital.  Kristian Smith was admitted for treatment at the State Hospital on 19 January 2012; he is no longer being held in the Pulaski County Jail.  *Document No. 91, at 1.* Because Duncan and Smith have received the prospective relief they sought

on their own behalf, their claims for injunctive relief are dismissed as moot. Similarly, Smith's motion for a preliminary injunction is denied as moot.

* * *

Motions to dismiss, *Document Nos. 29 & 43*, granted in part and denied in part. All Norman's claims are dismissed without prejudice; all of Duncan's claims are dismissed with prejudice; and Smith's official-capacity constitutional claims are dismissed with prejudice. Smith's Title II and ADA claims, as well as his individual-capacity constitutional claims, survive. The second motion for preliminary injunction, *Document No. 76*, is denied as moot.

Smith's counsel recently withdrew, *Document No. 89*, and the Court ordered Smith's guardian to secure new counsel promptly. In light of these events, the Court denies without prejudice the second motion to amend, *Document No. 75*. When Smith's new counsel appears, he or she will still have until the end of July to request any pleading amendment. *Document No. 73*.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

30 March 2012

-12-